UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
MARGUERITE ROONEY              )
                              )
           Plaintiff           )
                              )          **CIVIL ACTION**
v.                             )          **NO. 12-11173-TSH**
                              )
                              )
BANK OF AMERICA,              )
                              )
           Defendant.          )
_____)


# MEMORANDUM OF DECISION ON
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
April 3, 2014

**HILLMAN, DJ.**

## Introduction

This is an action alleging age discrimination pursuant to the ADEA, and intentional infliction of emotional distress Plaintiff, Marguerite Rooney ("Plaintiff" or "Ms. Rooney"), has sued her former employer, the Bank of America ("the Bank" or "Defendant") alleging she was subjected to unlawful age discrimination, resulting in her termination from employment Defendant Bank of America filed Defendant's Motion for Summary Judgment (Document No. 13) on all claims in Plaintiff's Complaint. After a hearing on that motion, I took the matter under advisement. On March 31, 2014, this Court granted Defendant's motion for summary judgment as to all counts (Docket No. 37), for the reasons that follow.

## Facts

The plaintiff, Marguerite Rooney, was first employed in the banking business in 1987 and began her employment with the Bank of America in approximately 2004. Plaintiff held various positions in retail banking, including as a part-time teller, head teller, sales and service representative, assistant manager and banking center manager. As an at-will employee, Plaintiff understood that she could leave her employment with Defendant and that she could be terminated at at any time.

Rooney was assigned to the Bank of America branch office in Marlboro, Massachusetts until 2005. In the Spring of 2005, Plaintiff became a grandmother and at that time requested that she be transferred to an assistant manager position so that she could spend more time with her family. Bank of America agreed to Plaintiff's request and reassigned her to the Solomon Pond Mall branch ("Solomon Pond Branch") location as an assistant manager. At the time of her transfer, Shareen Fahey ("Fahey"), banking center manager at the Solomon Pond Mall branch, became Plaintiff's supervisor. Also, while an assistant manager at the Solomon Pond branch, Plaintiff was under the management of Scott Ranilla ("Ranilla"), banking center manager, and then Beverly Brown ("Brown"), banking center manager. For a short time, when the banking center did not have an assigned manager, Krista Snyder ("Snyder"), a consumer market manager, supervised Plaintiff. There is nothing in the record to suggest that the Solomon Pond Branch location had any problems with audits during the period of time when Fahey and Ranilla were branch managers and Plaintiff was the assistant branch manager. In her role as the assistant branch manager, Plaintiff understood her duties to include coaching tellers and supporting the operations of the banking center. This included auditing tellers, auditing cash flow, auditing negotiables and supporting the teller operations specialist. As an assistant

manager in a banking center, Plaintiff was also responsible for checking the paperwork for new accounts opened at the banking center, unless she was the individual who opened the account; in that case the banking center manager would check the assistant manager's work. Plaintiff was responsible for ensuring that the keys and combinations for the banking center's secure areas were properly logged and accounted for and she was responsible for ensuring the security and accounting for any consignment items., e.g. travelers checks or money orders. Plaintiff was the assistant manager at the Solomon Pond Branch from the Spring of 2005 until her termination on November 5, 2008.

In March of 2007, after the appointment of Brown as Banking Center Manager, the Solomon Pond Branch barely passed an audit with a score of five (5); in 2007, a passing score for any Bank of America branch was five. In order to protect the Bank and its customers from loss, the Bank sends out internal employees to conduct audits of the operations of its banking centers. The internal auditors inspect areas of operational risk and provide feedback to the Bank's managers in order for them to make adjustments and corrections to the operational practices that will protect the customers and the Bank from loss.

The Solomon Pond Branch proceeded down a slippery slope with an audit grade of 6 in June of 2007 and a failing score 4 in November of the same year. In 2008, the branch received an audit score of 6 in February, a failing grade of 4 in August, and a 6 in November. Beverly Brown ("Brown") was the branch manager for the February and August audits. After the failed August audit, Brown was transferred to another location as a branch manager and Plaintiff received a written letter of warning for the branch failure. It appears to have been the policy of Bank of America to issue letters of warning to the entire management team of a branch location when a branch failed an audit.

Prior to Brown leaving for her new assignment, she issued a letter of warning to the Plaintiff. During the critical time between the August failure and a mock audit which was conducted in late October, the Solomon Pond Branch was without a branch manager and Plaintiff attempted to correct the branch's shortcomings without the benefit of a full staff.

On November 14, 2007, Snyder, the consumer market manager, issued Plaintiff a written warning for failure to meet performance expectations, following the failed November audit. The warning provided, in part:

> This is a written warning to address your failure to meet performance expectations. Failing the BCCR audit, failure to comply with departmental policy/procedures in the position of Assistant Manager. Previously you have been counseled verbally by Scott Rannila on 4 repeatable findings from your last BCCR for your performance. Action plans were in place and all inspection needs to be done by BCM, AM and TOS. However, you continue to demonstrate performance problems and have not performed at a level expected to be successful in your job.
>
> Your failure to meet expectations is as follows:
>
> -Failure to pass a BCCR
> -Missing Wire Draft Activity forms (3)
> -Incoming shipment not verified properly
> -Lacking documentation for a teller difference
> -Safe deposit access cards lacked ID
> -Electronic withdrawals lacked information
> -Associates did not have a good handle on Freedom to Act
>
> You are expected to demonstrate immediate and sustained improvement in the areas specifically addressed concerning your performance, and to comply with the policies, procedures, guideline and conditions of employment set forth above. Failure to meet expectations may result in further disciplinary action up to and including termination.

In August 2008, Plaintiff received a final written warning for failure to meet performance expectations; specifically:

> This is a final written warning to address your failure to meet performance expectations by failing the BCCR and failure to comply with departmental policy/procedures in the position of Assistant Manager. Previously you have been counseled in writing on November 11, 2007 [sic] for your performance. We have also revised pieces of the last BCCR of February 6, 2008 at our monthly staff meetings on May 18 and April 13, 2008. However, you continue to demonstrate performance problems and have not performance at a level expected to be successful in your job. Your failure to meet expectations is as follows:
>
> -Failure to pass a BCCR with repeat findings:

4

-Associates not able to answer questions: Monetary Instrument cash purchase limits and procedure. Website & process for ADA
-CTR error rate above 10% threshold.
-Key & Combo log out of balance
-Temporary Check card log not properly maintained
-e-withdrawal exceeding teller limit not initialed by approving associate
-Teller difference over $1000—no audit on file

You are expected to demonstrate immediate and sustained improvement in the areas specifically addressed concerning your performance, and to comply with the policies, procedures, guideline and conditions of employment set forth above. Failure to meet expectations may result in further disciplinary action up to and including termination.

Plaintiff did not dispute any aspect of the August 22, 2008 final written warning and understood that she could be terminated if her performance did not improve after the August 2008 final written warning. The branch, under Plaintiff's leadership, passed a mock audit in October of 2008 with a score of six and within a week of Plaintiff's termination the bank passed the regular audit with the same score. Sometime between mid and late September of 2008, Stephen Riordan ("Riordan") was appointed as the branch center manager at the Solomon Pond Branch.

After Riordan's appointment as branch manager at Solomon Pond, Snyder met with both Riordan and Plaintiff and made it clear that the responsibility for improving the bank's performance lay with the entire management team. While the bank passed both the mock audit in October and the full audit in November, Snyder remained disappointed with the overall performance of the branch.

Prior to issuing a second final written warning in September 2008, Riordan consulted with Defendant's human resources department and reported his concerns about Plaintiff, seeking advice as to how address Plaintiff's performance. During his tenure as banking center manager for the Solomon Pond Branch, Riordan received complaints from customers about Plaintiff's behavior and observed her yelling at a customer. After Plaintiff yelled at the customer, the customer approached Riordan and said she wanted to make a complaint

After the September 2008 final written warning, Plaintiff received another written warning in late October 2008, issued by Riordan:

> This is a final written warning to address your failure to meet performance expectations by failing the BCCR review, failure to comply with departmental policy/procedures in the position of Assistant Manager, and failure to comply with the statement of respect outlined in the Associate Handbook. Previously you have been counseled in writing on September 20th 2008 & August 22nd 2008 for your performance. In addition, you have been counseled in writing on November 11th 2007 for your performance. Also, pieces of the previous BCCR review of February 6th 2008 was [sic] reviewed at the monthly staff meeting on May 18 and April 13th 2008. However, you continued to demonstrate performance problems. As a result you have not performed at a level expected to be successful at your job.
>
> Your failure to meet expectations is as follows:
>
> -Delighting Customers & Associates– Failure to adhere to the Statement of Respect in the Associate Handbook.
> -Failure to correct, in a timely manner, previous findings found during the review in August 2008 by BCCR.
> -Prior to the due date, failure to complete assigned training in Associate Learning in a timely manner.
> -Failure to pass a BCCR with repeat findings:
> -Associates not able to answer questions:
> -Monetary Instrument cash purchase limits and procedure.
> -Website & process for ADA
> -CTR error rate above 10% threshold.
> -Key & Combo log out of balance
> -Temporary Check card log not properly maintained
> -e-withdrawal exceeding teller limit not initialed by approving associate
> -Teller difference over $1000—no audit on file
>
> You are expected to demonstrate immediate and sustained improvement in the areas specifically addressed concerning your performance, and to comply with the policies, procedures, guideline and conditions of employment set forth above. Failure to meet expectations may result in further disciplinary action up to and including termination.

Prior to issuing the October 2008 final written warning, on October 17, 2008, Riordan consulted with the Bank's Human Resources Advisor ("HR Advisor"), and reported to the HR Advisor that since being issued an amended final written warning on September 20, 2008, Plaintiff was involved in at least three instances of inappropriate behavior towards Bank associates, who reported that she had been disrespectful and rude to them regarding work tasks. Riordan reported to the HR Advisor that he met with Plaintiff on October 15, 2008 and

6

discussed the need for her to be respectful of associates during coaching of them, needs to be mindful of her tone of voice and how she comes across to associates.

Riordan reported to the HR Advisor that he had kept the market team updated regarding Plaintiff's behavior and that the team was not happy with Plaintiff's overall performance or behaviors. Riordan reported that he had spoken with Plaintiff, who did not believe her approach with other associates was inappropriate. Riordan stated to the HR Advisor that he had a very specific conversation with Plaintiff on September 20, 2008 about inappropriate behavior when he issued her a final written warning. Riordan reported that he had coached Plaintiff on her behavior almost every day, but that she was not showing improvement. Riordan did not mention Plaintiff's age to the HR Advisor.

Following the issuance of the third final written warning (dated October 28, 2008 and signed October 29, 2008), on October 31, 2008, Riordan again called HR to discuss Plaintiff's performance and spoke with another HR advisor. Riordan reported to HR that he had issued an action plan for Plaintiff's performance, issued an amended final written warning to Plaintiff and issued a copy of Defendant's statement of respect to Plaintiff on October 29, 2008. Riordan also reported that Plaintiff: (1) had been acting visibly upset and very short with other employees and customers; (2) had been assigned deliverable assignments to follow up on by the Consumer Market Executive, which Plaintiff had not done and about which she had not told Riordan even though he had directly asked her about her meeting with the market team at the time; and (3) received a customer complaint from an incident on October 25, 2008, related to her treatment of a customer, who had complained that Plaintiff had scared her and was mean to her. In the October 31, 2008 call with Advice and Counsel, Riordan was seeking permission to move forward with Plaintiff's termination. Based on the available information, the HR Advisor

supported termination of Plaintiff's employment for performance reasons. At the time of her termination, Plaintiff was 55 years old.

## Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery, and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"In reviewing a grant of summary judgment, this court 'constru[es] the record in the light most favorable to the nonmovant and resolv[es] all reasonable inferences in the party's favor.'" *Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 153 (citing *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 515 (1st Cir. 2009)) (quoting *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir. 2002)). The plaintiff/nonmovant can rely on both contradicted and non-contradicted evidence. *Sensing,* 575 F.3d at 153. "Where the record contains inconsistencies 'that favor in some lights the defendants and in others the plaintiff,' as long as the 'plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling.'" *Id.* (citing *Calero-Cerezo*, 355 F.3d 6, 19 (1st Cir. 2004)).

To establish a *prima facie* case for age-based termination under ADEA, a plaintiff must show that (1) she was at least 40 years old; (2) she was qualified for the position she had held; (3) she was fired; and (4) the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services. *Id.* (quoting *Vélez v. Thermo King de P.R., Inc.,* 585

F.3d 441, 447 (1st Cir. 2009)). Plaintiff is able to satisfy her burden to establish a *prima facie* case of age discrimination by showing that she was at least 40 years old, she had minimal qualifications for the position of assistant manager, Defendant terminated her employment and someone who was at least 5 years younger assumed the role of assistant manager.

Defendant has produced a written warning and three final written warnings issued to Plaintiff between November 2007 and October 2008, related to Plaintiff's failure to adequately address the operational concerns identified in the bank audits and observed by her managers, reports of customer and co-worker complaints about her discourteous treatment, the observation of her manager that she had yelled at a customer, and her failure to follow management's directions regarding her assignment of work and training to be completed by Plaintiff. At no time during her employment with Defendant did Plaintiff formally dispute any of the discipline she received.

Defendant has met its burden of production as the reason for Plaintiff's termination, and therefore, Plaintiff must come forward with sufficient evidence to prove that the real reason for her termination was age discrimination. In evaluating the defendant's reasons for the termination, however, "courts should not 'sit as super personnel departments, assessing the merits-or even the rationality-of employers' nondiscriminatory business decisions.'" Balboni v. The Great Atlantic & Pacific Tea Company, 2003 WL 2856429, at *6 (D. Mass. Apr. 3, 2009) (quoting Mesnick v. Gen. Elec. Co., 950 F. 2d 816, 825 (1st Cir. 1991)). The Supreme Judicial Court has specifically acknowledged that the task of courts "is not to evaluate the soundness of the [employer's] decision making, but to ensure it does not mask discriminatory animus." Sullivan v. Liberty Mutual Ins. Co., 444 Mass. 34, 56 (2005).

Plaintiff has no direct evidence of age discrimination, so her claims are analyzed under the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973); see also *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 104 (1st Cir. 2005). Under the *McDonnell Douglas* analysis, a plaintiff must first establish a prima facie case of gender discrimination by showing that: (1) she is a member of a protected class; (2) she was qualified for the job; (3) and the employer took a materially adverse employment action against her. *See Bhatti v. Trustees of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011). If the plaintiff succeeds, "[t]he burden then shifts to the defendant to present a legitimate, non-discriminatory reason, sufficient to raise a genuine issue of material fact as to whether it discriminated against the employee, for the employment decision." *Quiñones v. Buick,* 436 F.3d 284, 289 (1st Cir.2006). If the defendant provides such a reason, "the *McDonnell Douglas* framework—with its presumptions and burdens—is no longer relevant." *Vélez v. Thermo King de P.R., Inc.,* 585 F.3d 441, 447 (1st Cir.2009) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)) (internal quotation marks omitted). Instead, the ball returns to the plaintiff's court, in which she must prove by a preponderance of the evidence that defendant's alleged nondiscriminatory reason was in fact a pretext for discrimination. *Quiñones,* 436 F.3d at 289.

This Court, however, need not attempt to categorize the parties' arguments as relating to the presentation of direct evidence or the various stages of the burden-shifting framework. As the First Circuit stated in *Fennell v. First Step Designs, Ltd.,* 83 F.3d 526, 535 (1st Cir.1996):

> On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus.

*See also Tucker v. Kingsbury Corp.,* 929 F.Supp. 50 (D.N.H.1996) (considering whether plaintiff had sufficiently alleged pretext after assuming *arguendo* that plaintiff had established a prima facie case and defendant had rebutted satisfactorily). Accordingly, this Court will focus solely on one element required for a cognizable disparate treatment claim—discriminatory animus.

In *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701 (1993), the Supreme Court held that an employer who fired an employee to prevent that employee's pension from vesting did not violate the ADEA. In so holding, the Supreme Court explicitly considered the scope of liability under the ADEA when an employer treats an employee differently on the basis of a characteristic that is closely linked with age. The Court emphasized that "there is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Id.* at 609, 113 S.Ct. at 1705. The Court reasoned that "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily age based.' " *Id.* at 611.

However, "[w]hen the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." *Id.* at 611. In the aftermath of *Hazen Paper,* courts have emphasized the requirement of discriminatory animus when analyzing disparate treatment claims brought under the ADEA. For example, in *Testerman v. EDS Technical Prods., Corp.,* 98 F.3d 297 (7th Cir.1996), the Seventh Circuit held that the plaintiff failed to support an ADEA claim by asserting that the managers who fired him during a reduction in staff took account of his years of service. In so holding, the Court stated: "[plaintiff's] failure lies not in any lack of connection between age and length of service, but in

11

his inability to connect, even indirectly, length of service with discriminatory motive." *Id.* at 302. *Allen v. Diebold, Inc.,* 33 F.3d 674, 676 (6th Cir. 1994) (noting that "the ADEA prohibits only actions actually motivated by age and does not constrain an employer who acts on the basis of other factors ... that are empirically correlated with age"); *Lyon v. Ohio Educ. Ass'n and Prof'l Staff Union,* 53 F.3d 135 (6th Cir. 1995) (holding that plaintiff had failed to allege a prima facie case of age discrimination when there was no evidence that defendant was motivated by discriminatory animus).

In the present case, Plaintiff asserts that Defendant discriminated against her on the basis of age when it filled her position, after she was terminated for performance issues, with an employee who was younger than she and that discriminatory animus was shown when a co-worker inquired to her about retirement. Plaintiff does not claim that anyone made any comments about her age in relation to discipline or her termination, nor does she allege that any of the discipline related to the bank audits was motivated by her age. This, coupled with a very complete documentation of progressive discipline in relation to her performance issues at the Bank,[1] shows that the decision to terminate Plaintiff was "wholly motivated by factors other than age." *See Hazen*, 507 U.S. at 611.

Plaintiff alleges that in early 2008, Lisa Stewart asked how old she was and whether she had plans to retire. These comments are denied by Defendant, but assuming for purposes of summary judgment only that Plaintiff could prove they were made, they are not probative of age animus and were made in a benign context, long before and unrelated to the termination

---

[1] As to the discipline for disrespectful behavior toward customers and coworkers, Plaintiff simply denies that she had treated others badly. However, Plaintiff's own belief that her conduct was not disrespectful is not sufficient to present a triable issue of material fact. *See Shorette v. Rite Aid of Maine, Inc.,* 155 F.3d 8, 15 (1st Cir. 1998) (a plaintiff's "personal opinion regarding his own job qualifications is not sufficiently probative on the issue of pretext" to maintain an age discrimination claim)); *Benham v. Lenox Savings Bank*, 118 F. Supp. 2d 132, 145 (D. Mass. 2000) ("[a] plaintiff's mere personal disagreement with her employer's opinions about her job performance is not sufficiently probative to avoid summary judgment").

decision. First, this remark was made by one colleague out of many, and not from a person in a supervisory role. Therefore, it cannot serve as proof of the motivation of all management staff. *Cf. Testerman v. EDS Technical Prods. Corp.,* 98 F.3d 297, 301 (7th Cir.1996) (holding that plaintiff failed to establish discriminatory motive when none of the age-biased comments presented as evidence were made by people who decided to fire plaintiff). Second, this comment merely referred to plaintiff's potential status as a retiree, not as a person of the protected age class. As such, does not show that Defendant or its employees were motivated by improper age discrimination. Thus, they are stray remarks and cannot form the basis of Plaintiff's discrimination claim. Isolated or ambiguous remarks tending to suggest animus based age, are not sufficient, standing alone, to prove an employer's discriminatory intent. Such remarks made by the decision makers, if made unrelated to the decision-making process, cannot by themselves prove an employer's discriminatory intent or motive. *See Fontaine v. Ebtec Corp.*, 415 Mass. 309, 314 n.7 (1993). More specifically, comments regarding offers of retirement or suggestions of retirement generally do not prove age discrimination. *See Lee v. President & Fellows of Harvard College*, 60 Mass. App. Ct. 836,842 (2004) (offer of retirement package does not evidence age discrimination). Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims of age discrimination.

*Intentional Infliction Of Emotional Distress*

It is well-established that the Massachusetts Workers' Compensation Act, M.G.L. Chapter 152, provides the exclusive remedy for workplace claims that are compensable under its statutory scheme, including claims for intentional infliction of emotional distress. Doe v. Purity Supreme, Inc., 422 Mass. 563, 56566 (1996); Anzalone v. MBTA, 403 Mass. 119, 124 (1988) (claims for intentional infliction of emotional distress fall within the exclusivity provision of the

Workers' Compensation Act); and *Catalano v. First Essex Savings Bank*, 37 Mass. App. Ct. 377, 379-81 (1994).  Thus, Defendant is entitled to judgment as a matter of law on this claim.

## *Conclusion*

For the foregoing reasons, the Defendant's Motion for Summary Judgment (Docket No. 13) is **granted**.

SO ORDERED.

/s/ Timothy S. Hillman\
TIMOTHY S. HILLMAN\
U.S. DISTRICT JUDGE